**Scott NAES & Carol Naes, Plaintiffs–Respondents,**

v.

**REINHOLD DEVELOPMENT COMPANY, Defendant–Appellant.**

No. 70513.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 2, 1997.

Ray Dickhaner, Hillsboro, for defendant-appellant.

Thurman, Howald, Weber, Senkel and Norrick, L.L.C., Louis Jerry Weber, Hillsboro, for plaintiffs-respondents.

KAROHL, Judge.

Defendant, Reinhold Development Company, appeals $87,330 judgment for plaintiffs,

Scott and Carol Naes on their property damage claim. The jury found total damages to plaintiffs' home of $123,000. It apportioned 71% of fault for an earth slide against Reinhold and 29% against plaintiffs. The only claim of error in this appeal involves the apportionment of fault on their claim. Reinhold argues the apportionment of fault on its counterclaim for property damage caused by the earth slide, 57% against the Naes and 43% against Reinhold, should also be applied in the judgment on the Naes' claim for damages. The court entered a judgment of $87,330 for the Naes which is 71% of the total damages. Reinhold argues we should reverse and remand with an order that the court enter an amended judgment of $52,890.

The point on appeal:

**THE TRIAL COURT ERRED IN GIVING INSTRUCTION No. 10 AND REFUSING INSTRUCTIONS 10A AND 10B FOR THE REASON THAT DEFENDANT PROVED *A SUBMISSIBLE CASE OF FAILURE TO MITIGATE DAMAGES* IN THAT PLAINTIFFS ALLOWED OPEN FISSURES ON THEIR PROPERTY TO COLLECT RAIN WATER AND SATURATE THE HILLSIDE, CONTRIBUTING TO THE TOTALITY OF THE DAMAGES, AND SUCH ELEMENT SHOULD HAVE BEEN SUBMITTED TO THE JURY.** (Our emphasis).

The trial court submitted a single act of negligence of defendant Reinhold Development Company in the verdict directing instruction on the Naes' claim. The court submitted, and the jury found, Reinhold "withdrew the lateral support of land from Plaintiffs Scott Naes' and Carol Naes' property." The comparative fault instruction submitted a single negligent act of the Naes, that they "allowed a sewer trench on their property to accumulate surface waters." There was evidence to support a finding the Naes' open sewer trench allowed water to saturate the earth on a hillside running downhill from their home. The earth was saturated down to a shale substrate. The removal of lateral support combined with the saturation of earth resting on the shale caused a discernable earth slide on April 23, 1993. The hill gave way gradually. A re-

taining wall constructed by Reinhold at the bottom of the hill collapsed in 1994. Reinhold filed a counterclaim for damages to the wall. The court submitted a verdict directing instruction on Reinhold's counterclaim which permitted the jury to find the Naes were negligent in either or both of the following (1) "allowed a sewer trench on their property to accumulate surface waters" or, (2) " allowed openings in their yard to accumulate surface waters." The court submitted a comparative fault instruction which repeated Reinhold's single act of negligence, removal of lateral support. On the counterclaim, the jury found total damages of $11,000. It found Reinhold 43% at fault and the Naes, 57% at fault. The judgment on the counterclaim in the amount of $6,270 is final and not part of this appeal.

The question is whether the court erred in refusing Reinhold's comparative fault instruction on the Naes' claim which would have submitted both of the acts of negligence. There is no dispute that the counterclaim instructions were supported by the evidence. Accordingly, there is no dispute that there was evidence to support a finding that the Naes' open sewer trench was causal to the 1993 landslide which damaged their property, and there is no dispute the Naes' conduct in allowing the open sewer trench and not closing openings in their yard on the hillside caused additional surface water to accumulate and caused or contributed to cause Reinhold's damages caused by the 1994 landslide. The dispute pertains to whether there was evidence to support a finding the Naes' failure to deal with the openings, referred to as "scarps," contributed to cause or increase their damages which occurred after the 1993 landslide.

■ Reinhold argues the instruction error occurred when the court refused to permit the jury to find the Naes' failed to mitigate their damages when they allowed openings in their yard to accumulate additional surface water. It argues that mitigation is an element of fault. In *Love v. Park Lane Medical Center*, 737 S.W.2d 720 (Mo. banc 1987) the court accepted the definition of "fault" in the Uniform Comparative Fault Act. The Act defines fault to include both acts and omissions and also "unreasonable failure to avoid an injury or to mitigate damages." *Id.* at

724 (quoting U.C.F.A. Section 1(b) (1977)) (further citations omitted). In contrast with the negligence analysis under the abrogated contributory negligence, the court found "fault also includes avoidable consequences." *Love*, 737 S.W.2d at 724. Similarly, in *Stone v. Duffy Distributors, Inc.*, 785 S.W.2d 671 (Mo.App.1990) this court found plaintiff contributed to his own damages by failing to follow medical direction. It affirmed a comparative fault instruction which submitted only plaintiffs' failure to mitigate damages. Accordingly, there is support for considering mitigation as an element of fault in the context of comparative fault and not solely as a limitation of provable damage.

 The Naes' respond that the evidence would not support a finding that allowing openings in their yard to accumulate additional surface water caused or contributed to cause the landslide in their yard. An instruction must be supported by the evidence. However, the decision to refuse an instruction must be made on the basis of the evidence most favorable to submission of the instruction, considering all reasonable inferences and disregarding all opposing evidence. *Welch v. Hyatt*, 578 S.W.2d 905, 912 (Mo. banc 1979). Thus, refusing to submit an instruction supported by the evidence is error. The Naes concede an expert testified for Reinhold that the accumulation of surface water on the Naes' property was a causal factor in the earth movement which caused a collapse of the retaining wall. However, they argue this evidence was not relevant on their claim because the retaining wall was first installed after the earth on the hillside began to move in 1993, and the final result was inevitable. They conclude the unrepaired, open "scarps" were not the cause of any of plaintiffs' damages. They would limit the testimony of Reinhold's expert to support a finding that the additional accumulation of surface waters merely allow the hillside to slide more quickly but did not cause or contribute to cause their loss.

Reinhold's expert visited the site at the time of the April 19, 1993 landslide. There were retaining walls constructed behind the three building lots, 9, 10 and 11. Reinhold was in the process of constructing retaining walls behind lots 5 and 6. The lots abutted plaintiffs' property. He observed the hillside and concluded a depression created by inadequate backfilling of a sewer line trench collected water which saturated the underlying soil and increased the chance that the hillside would become unstable and slide. He also observed "scarps," on the Naes' property. Some were two or three feet deep. He concluded that rain or water would go through these scarps and saturate the soil along the slippage point. When asked the cause of slippage or sliding on the Naes' property he responded:

The slipping occurred due to the saturation of the soil by the heavy rains. The water saturated the soil from the sewer trench, which kicked out the lower block which went towards [Reinhold's subdivision]. Once that moved out, then the other blocks followed behind it, ... which is why you have the four scarps.

He testified it was "very important" once the slipping or sliding starts "to try and do something to the hillside as quickly as possible." Thus, he inferred corrective measure would have mitigated damages. Before learning that the Naes' home sits on a rock foundation he was concerned that the hillside would destroy their home. He emphasized that the failure to do anything on the slope itself would make the situation worse. He explained, "[a]ny rain or water which comes down goes through the tension cracks and saturates the soils along the slippage point and if you don't keep that water out of those cracks you're gonna [sic] be in trouble."

We conclude this testimony would support a finding that allowing the scarps to open without doing something as quickly as possible contributed to Naes' damages. Thus, the court erred in failing to submit both elements of negligence as issues of comparative fault on the Naes' claim for property damage.

The Naes' have asked us to assume arguendo that if we found "some bit of evidence to support [Reinhold's] refused instruction[ ]" we should find it to be speculative, conjecture and surmise, thus not probative. We reject the invitation because we find the argument goes to the weight rather than the sufficiency of the evidence to support submission.

 As a second alternative, the Naes contend that the remedy for trial court error in refusing Reinhold's proposed comparative

684

fault instruction is a remand for retrial of the damage issue because the issues on the claim and counterclaim are not identical so that collateral estoppel, argued by Reinhold, is inapplicable to percentages of fault found on Reinhold's counterclaim to the Naes' claim. Reinhold concludes we should remand with directions that the relative fault on the counterclaim be applied to the plaintiffs' damages so that they have judgment for 43% of $123,-000. The parties have not disputed the total damage award of $123,000. We conclude that the apportionment of fault issue on plaintiffs' claim must be retried. The jury did not decide plaintiffs were 57% at fault for their damage when it decided they were 57% at fault for the damage to Reinhold's wall.

We reverse the judgment for plaintiffs and remand for retrial of the comparative fault issue on plaintiffs' total damages of $123,000.

RHODES RUSSELL, P.J., and SIMON, J., concur.